IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAWN WESOLOWSKI        )
                       )
       Plaintiff,      )
                       )
   v.                  )    No. 15 C 8830
                       )
CAROLYN W. COLVIN,     )
                       )
       Defendant.      )

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Dawn Wesolowski's (Wesolowski) motion for summary judgment and Defendant Social Security Administration's (SSA) motion for summary judgment. For the reasons stated below, SSA's motion is denied, Wesolowski's motion is granted in part, and this matter is remanded to SSA for further proceedings consistent with this opinion.

**BACKGROUND**

In 2009, Wesolowski applied for Supplemental Security Income and Disability Insurance Benefits, and such requests were denied. On December 16, 2010, after a hearing before an Administrative Law Judge (ALJ), a decision was entered against Wesolowski. On February 29, 2012, the Appeals Council denied a request for

review, and on April 24, 2012, Wesolowski filed an appeal. A federal magistrate judge reversed the ALJ's decision and remanded the action. On remand, Wesolowski's applications were again denied and on October 5, 2015, Wesolowski filed the instant appeal. Wesolowski has filed a motion for summary judgment, seeking to have the ALJ's decision reversed and remanded for an award of benefits, and seeking in the alternative to have this case remanded to the ALJ for further proceedings to correct errors made by the ALJ. SSA has filed a motion for summary judgment seeking to have the ALJ's decision affirmed.

## LEGAL STANDARD

Pursuant to 42 U.S.C. §405(g), a party can seek judicial review of administrative decisions made under the Social Security Act. When an ALJ's decision is deemed to be "the final action of the Social Security Administration, the reviewing district court examines the ALJ's decision to determine whether substantial evidence supports it and whether the ALJ applied the proper legal criteria." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011).

## DISCUSSION

An ALJ examines a claim of disability under a five-step process. *Craft v. Astrue*, 539 F.3d 668, 673-74 (7th Cir. 2008). In step one, the ALJ "considers whether the applicant is engaging in substantial gainful activity." *Id.* In step two, the ALJ "evaluates whether an alleged physical or mental impairment is severe,

medically determinable, and meets a durational requirement." *Id.* In step three, the ALJ "compares the impairment to a list of impairments that are considered conclusively disabling." *Id.* If the applicant's impairment satisfies "or equals one of the listed impairments, then the applicant is considered disabled" and the inquiry ends. *Id.* If the inquiry continues, in step four, the ALJ "assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work." *Id.* In step five, the ALJ "assesses the applicant's RFC, as well as her age, education, and work experience to determine whether the applicant can engage in other work," and "[i]f the applicant can engage in other work, he is not disabled." *Id.* In the instant appeal Wesolowski argues: (1) that the ALJ erred in weighing certain medical evidence, and (2) that the ALJ erred in assessing Wesolowski's RFC.

I.  Weighing of Medical Evidence

Wesolowski argues that ALJ erred in weighing the opinion of the treating psychiatrist Dr. Mediea Gartel, M.D. (Gartel). The opinion of a treating psychiatrist is "entitled to controlling weight if well-supported and not inconsistent with other substantial evidence." *Meuser v. Colvin*, 2016 WL 5682715, at *5 (7th Cir. 2016)(internal quotations omitted)(quoting *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016)); *Lazier v. Colvin*, 601 F. App'x 442, 446 (7th Cir. 2015). Even if an ALJ declines to give controlling weight to a treating psychiatrist's opinion, the ALJ should "decide what weight to give that opinion." *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). In determining what weight to give a treating psychiatrist the

3

ALJ should consider the factors in 20 C.F.R. § 404.1527(c). The ALJ concluded that he did "not find support in the record for the degree of limitations assessed by Dr. Gartel, particularly in light of treatment records (including Dr. Gartel's) which contravene the level of dysfunction assessed." (AR 515). The ALJ also indicated that "[t]he degree of limitations assessed is hyperbolic at best and is belied by the medical record." (AR 515). Although it is clear that the ALJ discounted Gartel's opinion, the ALJ failed to specify what weight Gartel's opinion was given. The ALJ also failed to specifically address the factors in 20 C.F.R. § 404.1527(c) when considering Gartel's opinions. *See Sculley v. Colvin*, 2016 WL 727229, at *3 (W.D. Wis. 2016)(indicating that the ALJ had failed to adequately consider the factors). It is not clear from the ALJ's decision that he adequately considered all the factors in forming his decision, such as the treatment relationship or Gartel's specialization as a psychiatrist. *See Schickel v. Colvin*, 2015 WL 8481964, at *11 (N.D. Ill. 2015)(stating that "the ALJ wholly omitted any consideration of the factors related to the treatment relationship, exam frequency, and [the psychiatrist's] specialization, as mandated by the regulations"); *Koelling v. Colvin*, 2015 WL 6122992, at *10 (N.D. Ill. 2015)(finding that even if an ALJ could properly made a decision when "implicitly consider[ing] the checklist factors," the ALJ failed to cover the relevant factors and failed to address relevant issues). While an ALJ is not required to specifically reference all evidence in the record, the ALJ must at least "build an accurate and logical bridge from the evidence to" his conclusions. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

The ALJ also failed to offer sufficient explanation as to how Gartel's treatment notes contradicted his opinions or did not support the limitations proposed by Gartel. For example, the ALJ found unpersuasive Gartel's conclusion that Wesolowski was unable to meet competitive standards in a number of areas that would preclude sustained work activity. (AR 515). Gartel's treatment notes indicate Wesolowski regularly appeared to be in an agitated state and had trouble controlling her anger. (AR 1284, 1287, 1291, 1293, 1295, 1380 1383). The ALJ did not explain why he believed Gartel's assessment of Wesolowski's mental status at exams to be inaccurate. Gartel's treatment notes also indicate that Wesolowski, who suffers from a bipolar disorder, anxiety, and depression, had trouble accepting criticism from supervisors and getting along with co-workers and other persons in her life. (AR 1283, 1286, 1293, 1380). Gartel indicated that Wesolowski reported that she could "not stand being around people," that it "was not normal for her" and that she had decreased patience and agitation that increased as the day went on. (AR 1380). Although the ALJ rejected Gartel's conclusion regarding Wesolowski's ability to meet competitive standards, the ALJ failed to explain why he found the treatment records from Gartel to be insufficient or inconsistent and the ALJ failed to cite other medical evidence that contradicted Gartel's medical records.

The ALJ also disagreed with Gartel's conclusion that Wesolowski's mental impairments would have exacerbated the pain caused by fibromyalgia. The ALJ, in disagreeing with Gartel, explained that the ALJ had found that Wesolowski's fibromyalgia was not a severe impairment. (AR 515). However, Gartel never found

5

the fibromyalgia to be a severe impairment. (AR 1692). Gartel simply concluded that Wesolowski's mental impairments would have exacerbated the pain caused by fibromyalgia. (AR 1692). Thus, the ALJ did not sufficiently explain his disagreement with that conclusion. The ALJ himself acknowledged in his decision that Wesolowski's fibromyalgia resulted in some work limitations. (AR 502-03). The ALJ also failed to indicate whether he had considered the totality of Wesolowski's mental impairments, which included bipolar disorder, depressive disorder, and anxiety disorder. To the extent that the ALJ disagreed with Gartel's conclusion as to the effects of Wesolowski's mental impairments, or found the medical records from Gartel lacking in detail, the ALJ should have inquired further from Gartel instead of rejecting such medical evidence out of hand.

Gartel opined that Wesolowski would have been absent from work four or more days each month due to mental impairments. The ALJ rejected that opinion and found that it was not supported by the record. However, the record reflects that Wesolowski's employment was terminated in 2010 due to attendance problems and the averaged amount of missed work days appears to corroborate Gartel's opinion and treatment notes. (AR 282, 1776-89). Although SSA attempts in retrospect to bolster the ALJ's position by referencing various records, there is no indication that the ALJ engaged in a similar analysis and SSA cannot prevail based on post-hoc rationalizations. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014)(stating that the SSA cannot prevail on appeal on an "impermissible post hoc rationale"). The ALJ also failed to properly explain his conclusions regarding episodes of

decompensation and the ability to function outside of a highly supportive living environment. On remand, the ALJ should adequately explain why he concluded that Gartel's opinions were not supported by the evidence in the record. The ALJ should also consider the relevant factors if such a consideration would be necessary in order to adequately and clearly delineate the weight to be given to Gartel's opinions.

II. RFC Assessment

Wesolowski argues that the ALJ erred in assessing Wesolowski's RFC, by failing to provide a sufficient evidentiary basis for the limitations included in the assessment. An RFC constitutes "an assessment of what work-related activities the claimant can perform despite her limitations" and such a determination must be made "based on all the relevant evidence in the record." *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). The ALJ's RFC assessment included findings: (1) that Wesolowski retained the RFC to perform work at the sedentary exertional level but could stand and walk for 15 minutes at a time totaling no more than 2 out of 8 hours, (2) that Wesolowski required an option that allowed her to stand and walk for five minutes at one time after sitting for one hour at a time, (3) that Wesolowski could never climb ladders, ropes, or scaffolds, (4) that Wesolowski could occasionally climb ramps, and stairs, (5) that Wesolowski could occasionally stoop, balance, crawl, crouch, kneel, and crawl, (6) that Wesolowski could not work in hazardous environments, (7) that Wesolowski needed to avoid concentrated exposure to unguarded hazardous machinery, (8) that Wesolowski could perform simple, routine,

repetitive tasks that involved no more than simple decision-making and occasional and minor changes in the work environment, (9) that Wesolowski would perform at an average production rate, (10) that Wesolowski could tolerate brief and superficial interaction with the public, co-workers, and supervisors, (11) that Wesolowski should not perform teamwork or tandem tasks, and (12) that Wesolowski could not work in crowded or hectic environments. (AR 505).

The record reflects that in assessing Wesolowski's RFC, the ALJ discounted Gartel's opinions as well as the other medical opinion evidence. For example, the ALJ gave "minimal weight" to the opinions of the State agency non-examining consultants who concluded that "there was insufficient evidence to assess the residual functional capacity or that the impairments were nonsevere." (AR 517); *see also Lazier*, 601 F. App'x at 446 (stating that a treating psychiatrist's opinion "may be discounted if internally inconsistent or inconsistent with a consultant's opinion"). If the ALJ had provided a sufficient explanation for discounting the opinions of the various medical experts in this case, including the State agency non-examining consultants, the ALJ was obligated to seek out additional expert assistance. The ALJ instead improperly proceeded in that vacuum to engage in his own medical determinations. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)(stating that "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"). Several of the RFC findings appear to be contradictory to the medical evidence in the record. For example, the record indicates that Wesolowski suffers from various serious spinal conditions, which

8

would appear to be inconsistent with the assessment that she could sit for an hour at a time. (AR 412). The ALJ also failed to explain why he did not include Wesolowski's need to lie down intermittently. On remand, the ALJ should expand the record if necessary in order to properly determine Wesolowski's RFC. Based on the above, Wesolowski's motion for summary judgment is granted in part and SSA's motion for summary judgment is denied.

## CONCLUSION

Based on the foregoing analysis, SSA's motion is denied, Wesolowski's motion is granted in part, and this matter is remanded to SSA for further proceedings consistent with this opinion.

                                                _____
                                                Samuel Der-Yeghiayan
                                                United States District Court Judge

Dated: October 18, 2016